1. Under the practice in this State, there is no requirement for service of a cross-action or answer praying for affirmative relief which is germane to the original petition.
2. Under the soldiers and sailors' civil relief act, a person in military service is entitled as a matter of law to a stay of any proceeding by or against him in a case to which the statute is applicable, upon his bare application showing that he is in the military service, unless it is made to appear by further relevant evidence that his ability to prosecute or defend the proceeding is not materially impaired by reason of his military service.
(a) In the instant case, in which two of several plaintiffs in a main action sought a continuance or stay of a cross-action seeking partition of land by sale, the evidence introduced upon the hearing of their application contained nothing tending to show that their ability to defend such cross-action would not be materially impaired by reason of their military service, and it was therefore error to refuse their application.
(b) The court also erred in excluding testimony as to the possibility of a partition in kind by agreement, if these parties were present.
 No. 14731. JANUARY 12, 1944.
In this case the heirs of H. L. Lankford complain of an order directing partition by sale of a part of tract 4, as prayed in the cross-action of J. H. Milhollin and N.E. Holton, referred to in Lankford v. Holton, ante, 212. The facts in the instant case are the same in part as those stated in that case, and reference is hereby made to *Page 228 
the statement in that case as to proceedings before July 16, 1943. The main petition in the instant case is the same petition that was dealt with in that case, being a petition by Mattie L. Lankford and the heirs of H. L. Lankford, named therein as Retta M. Lankford, Jesse A. Lankford, Arthur C. Lankford, Henry M. Lankford, and Willie H. Lankford. It was alleged by these "heirs" that as to the tract of land designated as tract 4, Mrs. Rilza T. Holton and her grantees, J. H. Milhollin and N.E. Holton, to whom she had conveyed a part of this tract, and Mrs. Amanda Brice Tanner, to whom she had conveyed another part, were indebted to these plaintiffs, that is, the heirs of H. L. Lankford, for rents, issues and profits on their one-half undivided interest in this tract from January 1, 1929, to February 19, 1943, "and for future rentals." The petition contained among others a prayer for an accounting "for the purpose of determining the amount due to said heirs by said Mrs. Holton and those claiming under her of rents, issues and profits," and for judgment for the amount so found to be due.
On June 4, 1943, J. H. Milhollin and N.E. Holton filed a cross-action, alleging that a fair and equitable division of the land could not be made by metes and bounds, by reason of improvements thereon; that these defendants (petitioners in the cross-action) have been in possession of said land under a claim of right since May 6, 1936, and have placed permanent improvements thereon of the value of $1100; "that the value of a one-half interest in the permanent improvements placed on said tract of land by the defendants, Noah E. Holton and J. H. Milhollin, . . exceeds the rental value of a one-half interest in said land before it was thus improved, and therefore these defendants are not liable to plaintiffs in any amount for rentals on a one-half interest in said tract of land." It was prayed that commissioners be appointed to sell the land in question, that the proceeds of the sale be divided among the owners in proportion to their respective interests, "all in accordance with section 85-1511 of the Code of Georgia . . and the following sections which appertain thereto;" that an appropriate order be passed by the court requiring the plaintiffs to show cause at such time and place as may be fixed by the court why the prayers contained in the cross-action should not be granted, and for general relief.
(A cross-action was also filed by Mrs. Amanda Brice Tanner, the proceedings in which were similar to those here stated. SeeLankford v. Tanner, post, 237). *Page 229 
W. C. Lankford, attorney of record for the plaintiffs in the main case, in which the petition for sale of land was filed as a cross-action, signed an acknowledgment of service on the cross-petition, as "attorney for defendants Retta M. Lankford, Jesse A. Lankford, Arthur C. Lankford, Henry M. Lankford, and Willie H. Lankford," who were named as defendants in such cross-action. He also, as their attorney, filed a written motion to continue the hearing on the cross-action, in which he invoked the soldiers' and sailors' relief act as to two of these parties, and sought to withdraw the foregoing acknowledgment of service for reasons stated. Through the same attorney, the plaintiffs, as defendants in the cross-action, also filed an answer thereto, asserting various reasons why, as they contended, the relief prayed therein should not be granted.
After hearing evidence, the judge, on July 16, 1943, overruled the motion to continue, and on August 2 appointed commissioners to sell the land and report the sale to the court, in accordance with the Code, § 85-1512. The heirs of H. L. Lankford, defendants in the cross-action, brought the case to this court, assigning error on the judgment ordering a sale of the land, and on antecedent rulings to which exceptions pendente lite had been filed, including the order refusing a stay or continuance.
On the hearing of the motion for a stay or continuance, it was shown without dispute, by affidavit of Mrs. Retta M. Lankford, mother of Henry M. Lankford, and Willie H. Lankford, that they were both in the military service of the United States, Henry being at or near Tallahassee, Florida, and Willie being in the Mediterranean area.
W. C. Lankford, being called as a witness by the opposite parties, "upon cross-examination" testified: "I am attorney for Retta M. Lankford and the heirs of H. L. Lankford. Among those heirs there are two boys that are in the military service. I am attorney for them in this case generally. In this petition for partition I am appearing as attorney for them only in so far as it is necessary to make a showing that they are in the military service. On behalf of them I wish to say that I have been unable to communicate with them, and object to the case being tried further. These cases that we are talking about now all grew out of a land-registration case which went to the Supreme Court three times and has been up there and decided the fourth time recently. In this *Page 230 
action I represented these two boys, and the other heirs of H. L. Lankford. I have represented them from the time the land-registration case was filed up until to-day. I consider that I represent them now in that land-registration case proper. I represent them in this injunction suit brought to keep the judge from putting into effect the judgment of the Supreme Court. I represent them there. I consider that part of the land-registration proper, as I call it. In this motion to continue, I claim I inadvertently acknowledged service on the cross-action. That is substantially what I contend.
"I think Henry went in the military service about the first of this year. Maybe a little before. I know from time to time I have been asking his brother about where Henry was and when he was going in the military service, and he was kept out a good long while; that is my best recollection about it. I am not sure about that. I don't think he has been in there for as much as a year. Willie went in before Henry. I don't know when Willie went in. He was flying — taking flying lessons over at Douglas when we had this last trial in June two years ago. Willie was taking military training when this last hearing was had, in 1941. I don't know whether he was in the military service then or not. I don't know when his military service began, but he was taking training to do this identical work he is now doing two years ago. Since then he has continuously kept taking that training, and he is in Africa now, or over Sicily, or wherever it is. I said somewhere — wherever it is. I am pretty sure he will be over Sicily and over the Mediterranean. I haven't seen him there. I said when we had the last trial in June, 1941, over two years ago he was taking training at Douglas. I don't know whether that was military service or not. I don't know when he quit being a civilian and went in the military service, I don't know. Willie Lankford on the last trial was there several times, and was on the front seat in the court-house when he was taking military training at Douglas, and I went back there several times and talked to him about whether I thought it could be gained or not, and I didn't go into the details about it, because he didn't know anything about it.
"The other heirs of H. L. Lankford know very little about the case. They did not testify in the case. When their father died all the information that the family had about it disappeared, practically. *Page 231 
He was dead, and they knew nothing about it. He died the last of May, 1933. I don't think that Willie Lankford and Henry Lankford know a thing in the world about the evidence of the case already tried, which has been to the Supreme Court three times, that others don't know; but I think it is very important that if we are going to sell this land — I need those men here to see whether or not they can raise enough money to buy that land in, if it is going to be sold for partition. Mrs. Retta M. Lankford has got no considerable amount of property, and she is not able to raise money to buy in that property if it is sold for partition. Arthur C. Lankford is making a salary, but he is not making enough money to take care of any of the other heirs. Jesse A. Lankford, as I understand, has got no property, and these boys in the service couldn't help out at all; but it would be sold for whatever you and Mrs. Holton and Mr. Holton and Mr. Milhollin desire to pay for it, and those boys in the military service, as I see it, would be deprived of their property, without even bidding on it or helping finance it, and come back and find their place sold and gone for much less than it was worth. It is certainly unfair to try to partition in their absence.
"In response to the question by the court as to what is the financial status of those two boys in the service, I say I don't know of any property on earth they have got, except the interest in this land and what they get out of the government. They have no property that they could pledge on which to raise money if they were here. They have got no property except this half interest in this land. Outside of that, they wouldn't have anything on which they could raise money to use in bidding and put up as security. But if they were here, they could figure on whether they could put up even this half interest or not. If they bought in your half, they could put up property worth $12000, and if they could find somebody to loan money on the whole thing, the half interest and the interest they would be buying in, $12000 worth of property, they might finance it to get enough money on this property to buy in this half interest, or at least make you pay more for it, but with them there they can't do that. In response to Mr. Memory's question as to what has all that got to do with this proceeding as to whether the order will be granted for partition, I reply it has a whole lot to do with whether the judge should continue *Page 232 
this case or not. We are not trying the merits of the case now, as I understand it."
The same witness also gave the following testimony, which the judge excluded: "May it please your Honor, I ( W. C. Lankford) need those boys for another reason: this land is susceptible of partition — voluntary partition. I have a map here which is not drawn to scale, but is approximately correct. It is made up from having walked around this property yesterday and stepped the different distances and multiplied these steps by three feet for a step. It may or may not be accurate, but is approximately correct. It shows in heavy type the piece of land owned by Mrs. Tanner. It shows the filling station, and it shows ample property there that is not covered by anything that anyone could accept as their half interest in the tract of land and leave her the filling station, and leaving land behind it and maybe some land by it; and if I had those boys here, I could work out a proposition and offer to them to take their choice of these two halves that can be partitioned. If those boys were here, I would work out a similar proposition as to the other tract of land owned by Milhollin and Holton. I want to testify, and expect to testify if permitted to do so, that if these heirs were here that I could take them and go to Douglas and draw up a contract signed by those heirs, and by these other heirs, and then we could get either one of the two halves, and we could be able to present that, and I can't do it now."
In the exceptions pendente lite and also in the bill of exceptions, error was assigned upon the ruling excluding the testimony as last stated, it being alleged that this evidence should have been received and considered by the court in deciding the motion for continuance. Other facts in the case need not be stated.
(After stating the foregoing facts.)
1. Under the practice in this State, there is no requirement for service of a cross-action or answer praying for affirmative relief which is germane to the original petition. Shorter v.Shorter, 150 Ga. 109 (a) (102 S.E. 863). This statement accords with the decisions in Brown v. Tomberlin, 137 Ga. 596
(73 S.E. 947), and Terry v. Ellis, 189 Ga. 698
(7 S.E.2d 282). Where tenants in common sue their cotenants for an accounting for rents and profits, *Page 233 
and a cross-action is filed by the latter seeking partition of the common property by sale, such cross-action is germane to the original suit, and therefore service need not be made upon the plaintiffs as a prerequisite to jurisdiction. See, in this connection, Tate v. Goff, 89 Ga. 184 (15 S.E. 30);Baxter v. Camp, 129 Ga. 460 (4) (59 S.E. 283); Johnson
v. Hopkins, 145 Ga. 817 (3) (90 S.E. 60); Hall v.Collier, 146 Ga. 815 (2) (92 S.E. 536); Roberts v.Federal Land Bank of Columbia, 180 Ga. 832 (181 S.E. 180);Wallis v. Watson, 184 Ga. 38 (190 S.E. 360). It follows that regardless of whether the acknowledgment of service as entered by the plaintiffs' attorney upon the cross-action in this case was invalid or subject to withdrawal for any reason, the court did not err in refusing to postpone the hearing on the cross-action upon the ground that it had not been served.
2. In the same motion for a continuance, the soldiers' and sailors' civil relief act was invoked in behalf of the plaintiffs, Henry M. Lankford and Willie H. Lankford, who were shown without dispute to be in the military service, Henry M. being at or near Tallahassee, Florida, and Willie H. being in the Mediterranean area; and it is our opinion that the court should have granted the motion as to this ground.
The general purpose of the soldiers' and sailors' civil relief act of 1940 as amended is stated in section 100, as follows: "In order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defenses, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force." 54 Stat. 1179, 50 U.S.C.A., 1943 Cumulative part, § 510.
In section 201, it is declared: "At any stage thereof any action or proceeding in which a person in military service is involved, either as plaintiff or defendant, during the period of such *Page 234 
service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." 54 Stat. 1181, 50 U.S.C.A., supra, § 521.
In the recent case of Gates v. Gates, 197 Ga. 11
(28 S.E.2d 108), it was said: "The Federal statute, supra, confers upon the trial judge the power to stay a proceeding on his own motion in the exercise of his discretion. It then provides that upon an application for a stay the proceeding shall be stayed as provided in the act unless in the opinion of the trial judge the applicant's ability to prosecute or defend is not materially affected by reason of his military service. Under the first provision it appears that the judge is left free to stay the proceeding according to his own judgment, although the military service might in some degree constitute an impairment to prosecute or defend, but under the second provision it seems clear that when the application is made, it is imperative that the stay be granted unless it is made to appear further by relevant evidence, touching the question of impairment to prosecute or defend resulting from military service, that there is no material impairment. The act places no burden upon anyone to produce evidence touching this subject, but in view of the fact that it does authorize the court to deny the application when, in its opinion, there is no impairment, it is obvious that the judge has full power to make such inquiry as he may feel the justice of the case demands. He may obtain this evidence from either party, or the record in the case may constitute such evidence. It matters not which party produces the evidence or from what source it comes; so long as it is legal evidence relevant to the issue, the judge is authorized to consider it; and if in his opinion there is no material impairment by reason of the applicant's military service, he may deny a stay. The language of the act does not authorize a construction which would place upon the applicant the burden of proving that his ability to prosecute or defend the action is materially impaired."
While in the Gates case it was held that the court did not err in refusing the motion for a stay or continuance, the general principles *Page 235 
there enunciated will supply the standard for the instant case. The construction of the statute as there expressed was deemed to conform to the decision of the United States Supreme Court in Boone v. Lightner, 319 U.S. 561 (63 Sup. Ct. 1223,87 L. ed. 1587), which is of course the controlling authority, a Federal question being involved. It was said in the Boone case, that this statute "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation," and that "absence when one's rights or liabilities are being adjudged is usually prima facie prejudicial."
Although it may be a hardship on other litigants to suspend their actions until after the war, yet in the national interest, "wherever the rights of one in the military service may be adversely affected unless a stay is given, the court must grant a stay. That is one of the prices civilians must pay in aiding the war effort." Johnson v. Johnson (1943), 59 Cal.App.2d 375
(139 P.2d 33). Compare Swiderski v. Moodenbaugh (1942),44 F. Supp. 687; Reynolds v. Haulcroft (1943), 205 Ark. 760
(170 S.W.2d 678).
It is true that where evidence is introduced or inquiry made, the judge will then be called upon to form an opinion and exercise a discretion as to whether there is or is not material impairment. His conclusion, however, must be supported by some facts or data, and can not rest upon mere supposition or conjecture. Burke v. Hyde Corp. (Tex.Civ.App.) (1943), 173 S.W.2d 364. See, in this connection, Deering Harvester Co. v.Thompson, 116 Ga. 418 (42 S.E. 772); Griffin v. State,12 Ga. App. 615 (5), 621 (77 S.E. 1080).
In the instant case, the defendants by their cross-action were seeking a partition of land by sale, a proceeding that would require four major steps before it could be concluded: (1) an order for the sale, (2) actual sale at public outcry, (3) confirmation, and (4) disposition of the proceeds, upon an accounting. This is not to imply that the accounting should come last instead of first, or at some other stage. We are not dealing with that question. See Code, §§ 85-1511, 85-1512; Oswald v.Johnson, 140 Ga. 62 (78 S.E. 333, Ann. Cas. 1914D, 1);Knowles v. Knowles, 146 Ga. 507 (91 S.E. 776); Lowe v.Burke, 79 Ga. 164 (3 S.E. 449); 47 C. J., 459-461, 522, §§ 478, 480, 659. The point is, defense to the *Page 236 
cross-action would necessarily involve a progression, and it could hardly be foreseen what measures may be necessary to protect the interests of the objecting soldiers. The motion for a stay was duly made in their behalf, and if nothing else had appeared, they would have been entitled as a matter of law to the continuance as requested. But their attorney was called to the witness stand by the opposite parties and testified at considerable length, as shown in the preceding statement. In our opinion, his testimony contained nothing which tended to show that the interests of these soldiers would not be materially impaired by a disposition of the case in their absence. There was no other evidence touching that issue, and in the absence of anything to tilt the scales against them, the motion for a stay should have been granted. Moreover, it is our opinion that the evidence was not simply negative, but that it tended in some degree to support the motion. The financial ability of these cotenants, and the possibility that if they were present they could arrange for a loan so as to become bidders at the sale, when they might not thus protect their interest while in the military service, were proper matters for consideration. 47 C. J. 449, § 450.
It was permissible also to show the possibility of a partition in kind by agreement, if these parties were present, and the evidence to this effect should not have been excluded.
The fact that these soldiers were among those who instituted the main action for an accounting for rents and profits would not bar their right to a stay as against the cross-action, because the right may be claimed at any stage of any action or proceeding in which a person in the military service is involved, either as plaintiff or defendant. See 50 U.S.C.A. § 521, supra.
The conclusion we have reached finds direct support in the Code, § 85-1515, which, as here material, declares in effect that when proceedings have been instituted and a judgment of partition had thereon, and any one of the parties in interest is absent from the State during such proceeding, or has not been notified, such absent or unnotified party may at any time within twelve months move to set aside such judgment, on any ground on which he might have resisted the same at the hearing, and the issue shall be tried and the subsequent proceedings shall be the same as pointed out in cases of objections filed to the return of partitioners before judgment. *Page 237 
As will be noticed, this section is not dependent on absence of service, but its provisions will apply where a party at interest is either absent from the State or has not been notified. Compare Childs v. Hayman, 72 Ga. 791. The legislature thus declared in effect that even though a cotenant may be served, yet if he is absent from the State, his rights will be presumed so materially affected that a judgment may be set aside at any time within twelve months.
With this statute in addition to the soldiers' and sailors' civil relief act, it seems perfectly clear that the motion for a stay should have been granted in this case.
The error in overruling the motion for a stay rendered the further proceedings nugatory.
For annotations on the soldiers' and sailors' civil relief act, see 147 A.L.R. and other volumes of A.L.R. there cited.
Judgment reversed. All the Justices concur.