A09A0394, A09A0395. CORNELIUS et al. v. MORRIS BROWN
COLLEGE et al.; and vice versa.

(681 SE2d 730)

ANDREWS, Presiding Judge.

On March 12, 2008, a trial court entered an order memorializing the August 2007 automatic dismissal of this wrongful death action for failure to prosecute. In Case No. A09A0394, plaintiffs Hartwill Cornelius III and Patricia Cornelius argue that their motion to stay the action under the Servicemembers Civil Relief Act, 50 USC Appx. § 526, preempted and tolled the five-year rule set out in OCGA § 9-2-60 (b). In Case No. A09A0395, defendants Morris Brown College and Eugene Robinson argue that the trial court erred when it denied their motion for summary judgment. We affirm in Case No. A09A0394 and reverse in Case No. A09A0395.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000).

So viewed, the evidence shows that on the evening of August 29, 1997, Hartwill Cornelius IV, a returning Morris Brown student, and his friends gathered on the steps of a campus building. One of the friends went to a car to retrieve a CD. Shortly thereafter, a second friend heard that a fight had started. He turned around and saw two men attacking the first friend. A car then pulled up, several people got out, and the fight escalated to include seven or eight people. Hartwill IV and others then ran across the street and joined the fight. An unknown male struck Hartwill IV on the back of the head with a glass bottle. He later died from his injuries.

Plaintiffs brought this action for the wrongful death of their son, alleging that defendants failed to implement adequate security measures despite their knowledge of a high potential for danger in the area of the attack. In August 2002, the trial court denied defendants' motion for summary judgment. In January 2003, Hartwill III was deployed to Iraq. On May 1, 2003, plaintiffs filed a motion to stay the action until such time as Hartwill III was released from active duty. Plaintiffs' counsel sent a courtesy copy of the motion to the trial court with a cover letter stating that the defendants had consented to the motion. The trial court later noted, however, that the motion to stay had never appeared on its calendar.

On March 12, 2008, finding that no written order had been taken in the case since August 2002, the trial court entered an order noting that the action had been dismissed by operation of law.

Plaintiffs then moved to set aside this March 12 order. The trial court denied the motion but extended the time for filing a notice of appeal.

### Case No. A09A0394

1. Plaintiffs argue that the trial court erred when it entered its order noting the case's dismissal for failure to prosecute. We disagree.

Georgia's automatic dismissal statutes, OCGA §§ 9-2-60 and 9-11-41 (e), have "the dual purpose of preventing court records from becoming cluttered by unresolved and inactive litigation and protecting litigants from dilatory counsel." (Punctuation omitted.) *Brown v. Kroger Co.*, 278 Ga. 65, 68 (597 SE2d 382) (2004), quoting *Ga. Dept. of Med. Assistance v. Columbia Convalescent Center*, 265 Ga. 638, 640 (1) (458 SE2d 635) (1995); see also *Swint v. Smith*, 219 Ga. 532, 534 (3) (134 SE2d 595) (1964).

> [T]he statute grants a litigant five years to produce only the most minimal of activity to avoid dismissal and thereby to obtain a hearing on her claims. Moreover, in the event of dismissal, it permits the litigant to obtain a hearing on her claims by giving her the right to renew the action within six months of dismissal.

*Brown*, 278 Ga. at 68. What amounts to a five-and-a-half year rule is no less fair than a statute of limitation, for example, which may likewise "eliminate a claim that is not in fact stale." Id.

The last valid order entered in this case was the trial court's certificate of immediate review, granted on August 14, 2002. Plaintiffs' April 2003 motion for a stay was never ruled on. As we recently held:

> The mandatory duty to obtain and file an order falls upon the plaintiff to obtain a written order and have it entered upon the record to prevent an automatic dismissal [under OCGA §§ 9-11-41 (e) and 9-2-60 (b)]. In order to satisfy the statute, an order must be written, signed by the trial judge, and properly entered in the records of the trial court by filing it with the clerk. No party can waive this requirement.

*Roberts v. Eayrs*, 297 Ga. App. 821, 822 (2) (678 SE2d 535) (2009), quoting *Clark v. Clark*, 293 Ga. App. 309, 311 (667 SE2d 103) (2008). Plaintiffs' case was thus dismissed by operation of law on August 14, 2007, and no renewal action was filed. See OCGA § 9-11-41 (e) (renewal action may be filed within six months). Instead, plaintiffs

merely brought a motion to reconsider the automatic dismissal that had taken effect nine months earlier. But their action was "completely lifeless for all purposes" from the time of the automatic dismissal. *Brown*, 278 Ga. at 68, quoting *Goodwyn v. Carter*, 252 Ga. App. 114, 115 (555 SE2d 474) (2001); see also *Dollar v. Webb*, 132 Ga. App. 811 (209 SE2d 253) (1974).

The trial court's order of March 12, 2008, noted the action's dismissal by operation of law. But "any subsequent order after the automatic dismissal of the case is null and void, because the trial court has lost jurisdiction over the case, which no longer is pending before it." (Punctuation omitted.) *Brown*, 278 Ga. at 69. The only possible effect of the March 12 order was thus to authorize an appellate court to affirm the automatic dismissal by reason of the trial court's lack of jurisdiction.[1] See id. at 66, n. 3 (granting writ of certiorari from Court of Appeals' dismissal of appeal from trial court's grant of summary judgment on basis of automatic dismissal, and affirming the trial court on the merits); *Nelson v. Haugabrook*, 282 Ga. App. 399, 402 (2) (638 SE2d 840) (2006) (order memorializing automatic dismissal is "apparently directly appealable"); *Darden v. Ravan*, 232 Ga. 756, 758 (1) (208 SE2d 846) (1974) (appeal from a judgment void for lack of subject matter jurisdiction "will not be dismissed but instead, the void judgment will be reversed").

There is no authority for appellants' proposition that the Servicemembers Act preempts Georgia civil procedure law. A stay under the Act does not go into effect by operation of law or by the filing of a motion alone. On the contrary, 50 USC Appx. § 522 authorizes the grant of a stay only after the consideration of an application, the requirements of which are laid out in subsection (b) of that statute. In the absence of any actual or imagined conflict between those provisions of the federal statute requiring a trial court to rule on a motion to stay under the Act and our own dismissal statutes, which also require a properly signed and filed order, we are entirely unjustified in finding preemption. See *Duren v. Paccar, Inc.*, 249 Ga. App. 758 (549 SE2d 755) (2001) (reversing grant of summary judgment where federal regulations concerning truck safety device did not expressly or impliedly preempt Georgia law).

Because "no written order" was entered in this action "for a period of five years," OCGA § 9-2-60 (b), plaintiffs' action was

---

[1] It is clear from the so-called motion to set aside, as well as the brief in support and transcript of the hearing, that plaintiffs actually moved not to set aside the trial court's memorialization order under OCGA § 9-11-60, but rather for reconsideration of that order. As such, the trial court's denial of the motion cannot provide the jurisdictional basis for this appeal. *Smith v. Ticor Title Ins. Co.*, 200 Ga. App. 534, 536 (3) (408 SE2d 833) (1991) (denial of motion for reconsideration is not an appealable ruling).

dismissed by operation of law, and the trial court's memorialization of the automatic dismissal resulting from that fact was not erroneous. *Brown*, 278 Ga. at 69 (affirming trial court's judgment that renewal action was not authorized); *Roberts*, 297 Ga. App. at 823 (2) (affirming automatic dismissal); *Goodwyn*, 252 Ga. App. at 116 (affirming automatic dismissal); *Dollar*, 132 Ga. App. at 811 (affirming automatic dismissal).

2. In light of the above, plaintiffs' remaining assertions in Case No. A09A0394 are moot.

## Case No. A09A0395

3. Defendants first argue that the trial court erred when it denied summary judgment. We agree.

"[A]n adult of ordinary intelligence will be held to be aware of manifest risk or danger of possible injury when he deliberately and voluntarily joins in an affray, as a matter of law." *Fagan v. Atnalta, Inc.*, 189 Ga. App. 460, 461 (376 SE2d 204) (1988). Our whole-court decision in *Fagan* rejected the dissenters' argument that the rescue doctrine could apply to a fight case. Id. at 462, 464. Even when a person enters into an altercation with the purpose of breaking it up, the responsibility for any injury lies with the intervenor: "the superior knowledge must always remain with the combatants, as they, by their voluntary participation, have selected the time, date, and place for the altercation." (Punctuation omitted.) *Hansen v. Etheridge*, 232 Ga. App. 408, 410 (501 SE2d 517) (1998).

The record shows that Hartwill IV ran across the street to join a fight already begun between three others. There is no evidence in the record to show that any weapon was involved before Hartwill IV joined the altercation such that the rescue doctrine would apply. As in *Fagan*, *Hansen*, and many other cases, then "only one conclusion is permissible" here: that Hartwill IV "deliberately interjected himself into the affray," and "assumed the risk of injury by voluntarily confronting" those who had begun it. *Fagan*, 189 Ga. App. at 462 (affirming grant of summary judgment to bar owner sued by patron concerning injuries suffered in bar fight); see also *Hansen*, 232 Ga. App. at 410 (affirming grant of summary judgment to premises owner where plaintiffs' son was killed after attempting to break up a fight); *Habersham Venture v. Breedlove*, 244 Ga. App. 407, 411 (4) (535 SE2d 788) (2000) (reversing denial of summary judgment when plaintiff "voluntarily chose to enter into mutual combat with the assailants"); *Rappenecker v. LSE, Inc.*, 236 Ga. App. 86, 87 (1) (510 SE2d 871) (1999) (affirming grant of summary judgment to proprietor because plaintiff struck on the head with a beer bottle assumed any risk of injury by entering altercation).

4. In light of the above, defendants' assertion concerning the trial court's improper reliance on inadmissible hearsay is moot.

*Judgment affirmed in Case No. A09A0394. Judgment reversed in Case No. A09A0395. Johnson, P. J., Blackburn, P. J., and Ellington, J., concur. Barnes, J., concurs in the judgment only. Miller, C. J., and Mikell, J., dissent.*

MILLER, Chief Judge, dissenting.

I respectfully dissent in both cases.

In Case No. A09A0394, contrary to the majority's view, I find that dismissal in this case on the basis of Georgia's dismissal statutes, OCGA §§ 9-2-60 and 9-11-41 (e), elevates form over substance in contravention of the Servicemembers Civil Relief Act (the "Act"),[2] 50 USC Appx. § 501 et seq., here controlling federal law.

Critically important to the disposition of this case is an appreciation of the significant rights the Act seeks to preserve and protect on behalf of our men and women in the service of their country. Section 510 thereof declares these as follows:

> [i]n order to provide for, strengthen, and expedite the national defense under the emergent conditions which are threatening the peace and security of the United States and to enable the United States the more successfully to fulfill the requirements of the national defenses, provision is hereby made to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation, and to this end the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified over which this Act remains in force.

50 USC Appx. § 510 (2002); see also *Lankford v. Milhollin*, 197 Ga. 227, 233 (2) (28 SE2d 752) (1944). As the United States Supreme Court has held, the Act is to be "liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U. S. 561, 575 (4) (63 SC 1223, 87 LE2d 1587) (1943).

The majority points to 50 USC Appx. § 522 ("Section 522") as the stay provision at issue, arguing that it authorizes a stay only

---

[2] The Act was formerly known as the Soldiers' and Sailors' Civil Relief Act. 50 USC Appx. § 501 et seq. (2002).

upon "*a consideration of an application*, the requirements of which are laid out in subsection (b) of that statute." (Emphasis supplied.) But this is to engage in no more than supposition because Section 522, by its own terms, merely sets forth the conditions upon which entitlement to a stay rests.[3]

The same is true with respect to the stay provision of the Act in effect when Plaintiffs filed the instant motion for stay, 50 USC Appx. § 521 (2002) ("former Section 522"), which required the servicemember to demonstrate only that the exigencies of military service "materially affected" his or her or ability to prosecute or defend a civil action in order to authorize a stay. Id.

It is undisputed that Plaintiffs' motion to stay was made in compliance with former Section 522, i.e., evidence was presented showing that the requirements of Cornelius' military service materially affected Plaintiffs' ability to prosecute the instant lawsuit. There also is no dispute that Plaintiffs' consent motion to stay was duly filed and that a courtesy copy of the motion was sent to the trial judge. Moreover, the trial judge conceded that Plaintiffs were entitled to a stay of the proceedings, declaring that had she known of the motion, she "would have granted [the motion] in a heartbeat." While no order was entered, in fact, granting Plaintiffs a stay in this case, it is apparent that this was but the result of administrative

---

[3] In relevant part, Section 522 is as follows:

(a) Applicability of section. This section applies to any civil action or proceeding, including any child custody proceeding, in which the plaintiff or defendant at the time of filing an *application under this section – (1) is in military service or is within 90 days after termination of or release from military service; and (2) has received notice of the action or proceeding.*

(b) Stay of proceedings.

(1) Authority for stay. At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, the court may on its own motion and *shall, upon application by the servicemember, stay the action for a period of not less than 90 days, if the conditions in paragraph (2) are met.*

(2) Conditions for stay. An application for a stay under paragraph (1) shall include the following:

(A) *A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.*

(B) *A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.*

. . .

(d) Additional stay. (1) Application. *A servicemember who is granted a stay of a civil action or proceeding under subsection (b)* may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear. Such an application may be made by the servicemember at the time of the initial application under subsection (b) or when it appears that the servicemember is unavailable to prosecute or defend the action. . . .

(Emphasis supplied.) 50 USC Appx. § 522.

error alone, and given our duty to construe the Act liberally, I cannot conclude that Plaintiffs should be denied the effect of a stay to which they were clearly and indisputably entitled. Moreover, under the totality of the attendant circumstances, I am unpersuaded that the failure of Plaintiffs' counsel to secure a written order for stay should be regarded as in violation of OCGA §§ 9-2-60 and 9-11-41 (c). See *Atlanta Public Schools v. Diamond*, 261 Ga. App. 641, 644 (2) (583 SE2d 500) (2003) (The proceedings of courts of competent jurisdiction are presumed to have been regularly undertaken.). Thus, in my opinion, Plaintiffs' entitlement to a stay of the proceedings is established as a matter of law but for the intervention of administrative error, for which the Plaintiffs should not be penalized. Former Section 522; *Boothe v. Henrietta Egleston Hosp. for Children*, 168 Ga. App. 352, 353 (308 SE2d 844) (1983) (trial court required, as a matter of law, to grant stay upon applicant's request supported by a bare statement that he was active in the military service and no evidence indicated that his ability to prosecute the action would not be impaired).

While the majority disagrees, I am also satisfied that the operation of the five-year rule of OCGA § 9-2-60 (b) is preempted in this case. Specifically, the Supremacy Clause of the United States Constitution nullifies state law which (1) prevents or frustrates the accomplishment of a federal objective, or (2) makes it impossible for private parties to comply with both state and federal law. *Geier v. American Honda Motor Co.*, 529 U. S. 861, 873 (120 SC 1913, 146 LE2d 914) (2000) (discussing implied preemption when there is an "actual conflict" between state and federal law). The intention of Congress to ensure that the requirements of military service not compromise a servicemember's rights in civil litigation is made crystal clear by the Act. 50 USCS App. § 510 (2002); *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (2) (458 SE2d 95) (1995) ("The issue of federal preemption of state law is fundamentally a question of Congressional intent. . . .") (citation and punctuation omitted). Even without an express provision for preemption, we will find preemption where "*under the circumstances of [a] particular case*, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Emphasis supplied.) *Hines v. Davidowitz*, 312 U. S. 52, 67 (61 SC 399, 85 LE 581) (1941). To hold that the five-year rule under OCGA § 9-2-60 (b) runs, notwithstanding preemption by former Section 522 in the unique circumstances of this case, is manifestly to frustrate the plain intent of Congress to ensure that no servicemember be denied his or her day in court due to the requirements of military service. See *Municipal Elec. Auth. of Ga. v. Ga. Public Svc. Comm.*, 241 Ga. App. 237, 241 (3) (525 SE2d

399) (1999) ("[C]ourts should not interpret federal law to preempt state sovereignty unless the language of the federal law clearly compels the intrusion."). Sound public policy and the clear terms of former Section 522 require this interpretation of the statute. Given the foregoing, I do not reach the holding in *Roberts v. Eayrs*, 297 Ga. App. 821 (678 SE2d 535) (2009), and *Clark v. Clark*, 293 Ga. App. 309 (667 SE2d 103) '(2008), supra, to which the majority alludes.

In Case No. A09A0395, citing *Fagan v. Atnalta, Inc.*, 189 Ga. App. 460, 461 (2) (376 SE2d 204) (1988), the majority concludes, as a matter of law, that Cornelius IV assumed the risk involved in the fight at issue, foreclosing any application of the rescue doctrine as a defense. Finding jury questions remaining, I cannot agree.

The rescue doctrine may operate to excuse a rescuer's assumption of the risk if the " 'apparent necessity for rescue and assistance [is] made necessary by the . . . negligence of the defendant.' [Cit.]" *Montega Corp. v. Grooms*, 128 Ga. App. 333, 339-340 (8) (c) (196 SE2d 459) (1973). Assumption of the risk will not bar recovery so long as the rescuer's conduct does not evidence a reckless or wanton disregard of dangers inherent in the situation. *Lorie v. Standard Oil Co.*, 186 Ga. App. 753, 755 (368 SE2d 765) (1988). This is such a case.

Here, material issues of fact exist regarding the application of the rescue doctrine. Specifically, there is evidence that Cornelius IV and his friends came to the aid of a fellow student upon seeing him attacked by seven or eight others. The majority's claims to the contrary notwithstanding,

> [t]here is no issue involved as to assumption of risk, since the doctrine of rescue necessarily contemplates an assumption of the risk inherent in the peril created by the defendants' negligence and allows recovery for injuries thereby incurred, for the reason that the defendants were charged with the duty of anticipating that their negligence might attract rescuers who would necessarily have to assume the dangers inherent in the situation.

*Lorie*, supra, 186 Ga. App. at 755 (1). Consequently, a jury should be allowed to decide whether Cornelius IV was in the exercise of ordinary care in attempting to rescue his fellow student or whether "his actions [were] so imprudent and beyond what a person in the same circumstances might be expected to do that they must be classified as reckless and wanton. [Cit.]" Id.

Plaintiffs, in sum, are entitled to their day in court, and in fairness, this Court should allow it.

I am authorized to state that Judge Mikell joins in this dissent.

DECIDED JULY 14, 2009 

*Charles A. Mathis, Jr.*, for appellants.
*Swift, Currie, McGhee & Hiers, Bradley S. Wolff*, for appellees.