A08A2136. PORTER et al. v. URBAN RESIDENTIAL
DEVELOPMENT CORPORATION et al.

(670 SE2d 464)

BLACKBURN, Presiding Judge.

In this premises liability case for the wrongful death of their son arising out of a fight at an apartment complex owned by Urban Residential Development Corporation ("URDC") and managed by Alton Management Corporation ("Alton"), Gayle and Leontine Porter appeal the summary judgment awarded to URDC and Alton, contending that the trial court erred in denying the Porters' motion to withdraw admissions and in granting summary judgment to URDC and Alton. We hold that the trial court correctly found that the Porters failed to present evidence showing why withdrawal of the admissions was necessary to advance the presentation of the merits, which failure justified the denial of their motion to withdraw the admissions. We further hold that summary judgment was justified because the undisputed facts show that the decedent son voluntarily entered into the fight that led to his injuries and death. Accordingly, we affirm.

Summary judgment is only proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). See *Lau's Corp. v. Haskins*.[1] A de novo standard of review applies to an appeal from a denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[2]

So viewed, the evidence shows that on July 31, 2004, the decedent son went to the Landrum Arms Apartment complex to visit a female tenant of the complex. He then visited with a male acquaintance (Martell Riddle), who also lived at the complex, and had a beer with him. During this latter visit, Riddle informed the decedent that the CD player the decedent had sold to him earlier was defective and that Riddle wanted his money back. Telling Riddle that he did not have any money, the decedent left the area. Shortly thereafter, when Riddle witnessed the decedent purchasing drugs, Riddle confronted the decedent about buying drugs rather than paying Riddle the money owed to him.

During this confrontation, the decedent began cursing at Riddle, who in turn struck decedent with his fist; the decedent responded in kind. After exchanging several blows, the pair ceased fighting. Nevertheless, the decedent remained at the scene; following a

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

further verbal altercation, the two recommenced the fistfight. Two acquaintances of Riddle soon joined the fight on behalf of Riddle, ganging up on the decedent. Armed with a rock or brick, Riddle and the other two men chased the decedent, who tried unsuccessfully to seek refuge in a nearby apartment. After the group caught the decedent and beat him mercilessly in the street, a truck operated by an intoxicated driver drove on the wrong side of the street and struck the decedent, killing him.

Claiming that lack of security at the apartment complex caused the death of their son, the Porters sued the owner of the apartments (URDC) and the company managing the apartments (Alton) for wrongful death. URDC served requests to admit on the Porters, to which they did not timely respond and which therefore became admitted by operation of law. See OCGA § 9-11-36 (a) (2). The Porters moved to withdraw the admissions, and both defendants then moved for summary judgment. Finding that the Porters failed to show that the presentation of the merits would be advanced by allowing the withdrawal of the admissions, the trial court denied the motion to withdraw the admissions; in that same order, the court further found that because the undisputed facts showed that the decedent had voluntarily entered into the fight, summary judgment for the defendants was proper. The Porters appeal.

1. The Porters allege that the trial court abused its discretion in denying their motion to withdraw admissions. We disagree. Pursuant to OCGA § 9-11-36 (a) (2), the matters in the requests for admissions were admitted by operation of law when the Porters failed to answer the requests within 30 days of service. See *Fox Run Properties v. Murray*.[3] The trial court had the discretion to permit withdrawal of the admissions if the two-prong test of OCGA § 9-11-36 (b) was satisfied. *Brankovic v. Snyder*.[4] See *Fox Run Properties*, supra, 288 Ga. App. at 570 (1) (court's decision on motion to withdraw subject to abuse of discretion standard of review). Those two prongs are (1) that withdrawal of the admissions will subserve or advance the presentation of the merits of the action and (2) that there is no satisfactory showing that withdrawal will prejudice the party who obtained the admissions. *Brankovic*, supra, 259 Ga. App. at 580. The party seeking to withdraw the admissions has the burden of establishing the first prong by showing that "the admitted request either can be refuted by admissible evidence having a modicum of credibility or is incredible on its face, and the denial is not offered solely for purposes of delay." *Intersouth Properties v. Contractor*

[3] *Fox Run Properties v. Murray*, 288 Ga. App. 568, 569 (1) (654 SE2d 676) (2007).

[4] *Brankovic v. Snyder*, 259 Ga. App. 579, 580 (578 SE2d 203) (2003).

*Exchange.*[5] See *Ledford v. Darter*[6] (to withdraw admissions, movant must show that the proffered denial could be proved by admissible evidence). Failure to present admissible, credible evidence contradicting the admitted matters justifies the denial of the motion to withdraw. Id. See *Intersouth Properties*, supra, 199 Ga. App. at 728 (1).

Here, evidence supported the trial court's exercise of its discretion to deny the motion to withdraw, as the Porters failed to present evidence contradicting the admissions to be withdrawn. In this regard, we address only those admissions that pertain to the key element of whether the decedent entered into the fight voluntarily, as this fact alone is dispositive of the motion for summary judgment (as discussed in Division 2 below). Those admissions were as follows:

9.

On July 31, 2004, the Decedent drank alcohol with residents of Landrum Arms Apartments.

10.

On July 31, 2004, the Decedent drank alcohol with Martell Riddle.

\*\*\*

13.

Prior to July 31, 2004, the Decedent sold Martell Riddle a defective CD player.

\*\*\*

15.

On July 31, 2004, the Decedent owed Martell Riddle a sum of money.

16.

On July 31, 2004, a dispute ensued between Martell Riddle and the Decedent regarding a sum of money that the Decedent owed to Martell Riddle.

---

[5] *Intersouth Properties v. Contractor Exchange*, 199 Ga. App. 726, 728 (1) (405 SE2d 764) (1991).

[6] *Ledford v. Darter*, 260 Ga. App. 585, 588 (1) (580 SE2d 317) (2003).

## 17.

The only dispute in which the Decedent was involved on July 31, 2004 at Landrum Arms Apartment[s] involved a personal dispute between the Decedent and Martell Riddle.

In conjunction with the testimony of Riddle himself, these admissions helped establish that the decedent voluntarily entered into a violent fight with Riddle to resolve a personal money dispute. In support of their motion to withdraw admissions, however, the Porters presented no competent or admissible evidence (let alone credible evidence) contradicting any of these admissions. Indeed, the Porters' witnesses readily conceded that although they may have witnessed the decedent coming to seek refuge after the fight had begun, none of them witnessed the commencement of the fight and therefore none of them could contradict the admissions nor Riddle's testimony that the decedent entered into the fight voluntarily to resolve a personal money dispute. Absent such competent evidence contradicting these key admissions, the trial court did not abuse its discretion in denying the motion to withdraw these admissions. See *Intersouth Properties*, supra, 199 Ga. App. at 728 (1).

2. The Porters argue that the trial court erred in ruling that URDC and Alton were entitled to judgment as a matter of law based on the judge's finding that the decedent was voluntarily involved in a personal dispute that resulted in a violent fight while on the premises. Because the undisputed evidence supports this finding, we discern no error in the court's ruling.

The importance of this finding is best understood by our first addressing the theory of premises liability underlying the Porters' claim.[7] The seminal case of *Lau's Corp.*, supra, 261 Ga. at 492 (1), explains this theory:

> A proprietor's duty to invitees is to exercise ordinary care in keeping the premises and approaches safe. The proprietor is not the insurer of the invitee's safety, but is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge. If the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters.

(Citations and punctuation omitted.)

---

[7] We assume arguendo that the decedent was an invitee, as the decedent was involved in a personal, voluntary dispute, which relieved defendants of liability regardless of the decedent's status as an invitee or licensee.

Here, the Porters presented evidence (construed in their favor) that defendants were aware that there had been numerous assaults on the apartment premises, many of which involved Riddle and his companions who lived at the complex. The Porters presented further evidence that at the time of the incident in question, the apartment complex had no security officers on duty.

Nevertheless, summary judgment against the Porters was mandated because the undisputed evidence showed that this was a violent fight into which the decedent voluntarily entered. The fight arose from a personal dispute between the parties as to an allegedly defective CD player sold by the decedent to Riddle, for which Riddle wanted a refund. When Riddle demanded the refund, the decedent began cursing at Riddle, which escalated the conflict into fisticuffs, where the decedent and Riddle exchanged blows until they tired. Following a further verbal exchange, they recommenced fisticuffs, which escalated into extreme violence when Riddle obtained a brick or stone and with his companions ganged up on the decedent, who then sought to escape the confrontation by seeking refuge in a nearby apartment.

Under such circumstances, the law is clear. A party who voluntarily enters into a violent fight has knowledge of its hazards superior to the knowledge of the premises owner, as he and the other combating party,

> by their voluntary participation, have selected the time, date, and place for the altercation. Any injuries to the combatants resulted from their own conduct[,] and under such circumstances, *the existence of prior criminal acts on the premises is irrelevant and cannot form a basis for liability on the premises owner.*

(Emphasis supplied.) *Sailors v. Esmail Intl.*[8] *Driver v. Leicht*[9] held similarly that for these reasons, "an active participant in a brawl" cannot sue the premises owner for injuries from that brawl. And *Hansen v. Etheridge*,[10] which involved an unarmed peacemaker who tried to stop a fight involving a knife, held that the premises owner was not liable for the peacemaker's death from that fight. "Even if a social host is negligent, he is not liable to an injured guest if that guest is an active participant in the sequence of events resulting in his injury." (Punctuation omitted.) *Id.* As an active, voluntary participant in the fight's commencement and its continuation, the

---

[8] *Sailors v. Esmail Intl.*, 217 Ga. App. 811, 813 (1) (459 SE2d 465) (1995).

[9] *Driver v. Leicht*, 215 Ga. App. 694, 695 (452 SE2d 165) (1994).

[10] *Hansen v. Etheridge*, 232 Ga. App. 408, 410 (501 SE2d 517) (1998).

decedent (and thus his parents) could not sue URDC and Alton for injuries resulting from the fight.

Moreover, this fight arose from a *personal* dispute between the decedent and Riddle over an allegedly defective CD player that the decedent sold to Riddle, for which Riddle wanted a refund that the decedent was unable or unwilling to pay at that time. Thus, this case differs significantly from those in which a jury could find a legal failure by the landowner to keep the premises and approaches generally safe, so that its invitees are not subjected to the risk of generally foreseeable attacks. See generally *Griffin v. AAA Auto Club South*.[11] Rather, this assault arose from a personal dispute between the parties, which accordingly was not part of any pattern of generally foreseeable assaults against which the landowner was obligated to protect. See *Reid v. Augusta-Richmond County Coliseum Auth.*[12]

For these reasons, the trial court did not err in granting summary judgment to URDC and Alton.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 13, 2008 —
RECONSIDERATION DENIED NOVEMBER 25, 2008 — 

*Simmons & Simmons, Robert L. Simmons*, for appellants.

*Freeman, Mathis & Gary, Michelle J. Hirsch, Philip W. Savrin*, for appellees.

---

[11] *Griffin v. AAA Auto Club South*, 221 Ga. App. 1, 3 (1) (470 SE2d 474) (1996).

[12] *Reid v. Augusta-Richmond County Coliseum Auth.*, 203 Ga. App. 235, 237 (1) (416 SE2d 776) (1992).