**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 5, 2019**

# In the Court of Appeals of Georgia

A18A1600. BOLTON et al. v. GOLDEN BUSINESS, INC.

MERCIER, Judge.

On October 23, 2015, Shaneku McCurty was murdered in a convenience store parking lot. Her mother, Shirley Bolton, sued the convenience store owner/operator, Rikaz Food, Inc. ("Rikaz"), and its landlord, Golden Business, Inc. ("Golden"), for wrongful death and other damages.[1] Golden subsequently moved for summary judgment, which the trial court granted. Bolton appeals, and for reasons that follow, we affirm.[2]

---

[1] McCurty's father, Dennis McCurty, was originally a named plaintiff in the lawsuit, but he was dropped as a party in 2017 following his death.

[2] Bolton's claims against Rikaz are not at issue in this appeal.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the non-moving party. See *Fair v. C V Underground*, 340 Ga. App. 790 (798 SE2d 358) (2017).

So viewed, the record shows that Golden has owned and operated numerous commercial properties, including gas station convenience stores, for over two decades. In 2000, Golden purchased real estate in Stone Mountain that housed several businesses. Soon after the purchase, Golden added a convenience store to the property. Golden built the store, then operated it for eight or nine months before leasing the premises to another operator, who ran the store until Rikaz took over the lease and store operations in 2013.

Without dispute, Rikaz was the owner/operator of the convenience store when McCurty entered to buy snack items just after 1:00 a.m. on October 23, 2015. McCurty completed her purchase and returned to her car, which was parked in front of the store. Before getting into her vehicle, however, she was confronted by an

2

unidentified assailant, who shot and killed her. Acting individually and as administrator of McCurty's estate, Bolton sued Rikaz and Golden, alleging that they failed to exercise ordinary care to keep the premises safe and allowed a dangerous condition to exist on the property, creating a nuisance. Golden moved for summary judgment, arguing that it was not responsible for McCurty's death or any damages suffered by Bolton. The trial court agreed. We find no error.

1. Although a landowner must "exercise ordinary care in keeping the premises and approaches safe" for its invitees, it is not required to insure an invitee's safety. *Fair*, supra at 792 (1) (citation and punctuation omitted). Rather, it has a duty to exercise ordinary care to protect its invitees "from unreasonable risks of which it has superior knowledge." Id. An intervening criminal act by a third party generally "insulates [the landowner] from liability unless such criminal act was reasonably foreseeable." Id. Thus, a landowner only "has a duty to exercise ordinary care to guard against injury from dangerous characters" when it "has reason to anticipate a criminal act." Id. (citations and punctuation omitted). See also *Sun Trust Banks v. Killebrew*, 266 Ga. 109 (464 SE2d 207) (1995) (landowner is not "liable for the criminal act of a third party unless it has reasonable grounds for expecting that such a criminal act would occur").

3

According to Bolton, Golden should have foreseen – and taken steps to prevent – the deadly assault in this case because people often loitered outside of Rikaz's convenience store, other violent crimes had occurred at the store, and the store was located in a high-crime area. It is true that the foreseeability of a criminal act "may be established by evidence of one or more prior similar crimes." *Piggly Wiggly Southern v. Snowden*, 219 Ga. App. 148 (1) (a) (464 SE2d 220) (1995). The key question, however, is the landowner's superior knowledge of the criminal activity. See *Fair*, supra ("But even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the *superior* knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm."); *Medical Ctr. Hosp. Auth. v. Cavender*, 331 Ga. App. 469, 474 (1) (771 SE2d 153) (2015) ("[I]t is the Plaintiffs' burden to establish that the property owner had knowledge of the previous substantially similar crimes on or near the premises upon which the plaintiffs rely to establish foreseeability.").

Karim Aly, Golden's sole owner, testified that he thought Rikaz's store was located in a safe area based on his examination of the property and surrounding neighborhood, and he did not know about any prior crimes in or around the store. Although Golden equipped the convenience store with bulletproof glass and security

4

cameras in 2000, Aly asserted that he incorporates these safety measures in *all* stores that Golden builds or operates, regardless of store location and partly for insurance purposes. Aly conceded that he visited the property periodically to "see [that] everything . . . [was] the way [it was] supposed to be." But Bolton has pointed to no evidence that Aly witnessed criminal activity or misconduct during these visits, that his tenants informed him about crimes or other problems, or that Aly received any request for increased or different security.

Despite Aly's testimony, Bolton argues that ongoing and rampant crime in the area should have put Aly (and thus Golden) on notice that a dangerous condition existed on the property. In support, she cites to police reports and other evidence detailing the criminal activity. Bolton, however, cannot "rest upon the police reports as a means to establish [Golden's] knowledge of the activities contained in those reports." *Cavender*, supra at 477 (1) (b). See also *Killebrew*, supra ("There is no authority in this State imposing a duty upon a property owner to investigate police files to determine whether criminal activities have occurred on its premises[.]"). And she has not demonstrated that Golden knew about or was alerted to the possibility of prior

crimes in Rikaz's convenience store, the store parking lot, or the surrounding area.[3]

Under these circumstances, the existence of crime in the area – by itself – does not raise a genuine question of material fact as to Golden's knowledge. See *Baker v. Simon Property Group*, 273 Ga. App. 406, 407 (1) (614 SE2d 793) (2005) (because plaintiff failed to show that defendants were aware of crime reports made to police, reports could not be used to demonstrate foreseeability of the attack); compare *Double View Ventures v. Polite*, 326 Ga. App. 555, 561 (1) (a) (757 SE2d 172) (2014) (evidence of prior violent criminal activity on convenience store property, including inside convenience store, raised factual question as to whether *convenience store* owner/operator knew or should have known about hazardous condition on its premises), overruled in part on other grounds by *Martin v. Six Flags Over Ga. II*, 301 Ga. 323, 341 (III) n.12 (801 SE2d 24) (2017).

Absent evidence that Golden had reason to know about prior, similar criminal activity in the area, Bolton cannot establish that the attack on McCurty was foreseeable

---

[3] On appeal, Bolton suggests that Golden had a duty to investigate misconduct and other problems in the parking area, which would have revealed an ongoing crime issue. Again, however, she has pointed to no evidence that Golden knew or had grounds to know about problems in the parking lot that might have prompted further investigation.

to Golden. See *Cavender*, supra (premises liability claim failed without proof that defendants knew about prior criminal activity on or around its premises). The trial court properly granted summary judgment to Golden on Bolton's premises liability claims. See id.

2. Golden was also entitled to summary judgment on Bolton's nuisance claim, which, like the premises liability claims, stemmed from a purported failure to keep the premises safe. As noted by the trial court, "there can be no liability for nuisance without evidence that the defendant had notice or knowledge of the alleged defect." See *Thompson v. City of Atlanta*, 274 Ga. App. 1, 4 (2) (616 SE2d 219) (2005) ("Knowledge or notice of the alleged defective condition is an element of [the nuisance] claim[.]"). Bolton's failure to raise a genuine issue of fact as to Golden's knowledge, therefore, was fatal to this claim, as well. See *Thompson*, supra.

3. Finally, Bolton argues that the trial court erred in granting summary judgment to Golden on her claims for punitive damages and attorney fees. But because the trial court correctly granted summary judgment to Golden on Bolton's underlying claims against Golden, "the grant of summary judgment on [her] punitive damages and attorney fees claims was also proper." *Albee v. Krasnoff*, 255 Ga. App. 738, 744 (7) (566 SE2d 455) (2002).

7

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*