**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely**
**filed.**
        **https://www.gaappeals.us/rules**

**October 28, 2024**

# In the Court of Appeals of Georgia

A24A1022. JONES et al. v. SCARLETT & ASSOCIATES, INC.

GOBEIL, Judge.

Curtis T. Jones was injured when he was shot by a security guard during an altercation in a restaurant parking lot in 2021. Jones and his mother, Milan Junchalearn (collectively referred to as the "Appellants"), subsequently filed a premises liability action against several entities, including the property owner, Scarlett & Associates, Inc. ("Scarlett"). The trial court granted Scarlett's motion for summary judgment, finding that the Appellants' claim was precluded by the application of the mutual combatant doctrine. On appeal, the Appellants argue that issues of fact remain and the trial court erred by entering judgment in Scarlett's favor. For the reasons explained more fully below, we affirm.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> When a defendant moves for summary judgment as to an element of the case for which the plaintiff, and not the defendant, will bear the burden of proof at trial[,] the defendant may show that [it] is entitled to summary judgment either by affirmatively disproving that element of the case or by pointing to an absence of evidence in the record by which the plaintiff might carry the burden to prove that element. And if the defendant does so, the plaintiff cannot rest on his pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Beale v. O'Shea*, 319 Ga. App. 1, 2 (735 SE2d 29) (2012) (citation and punctuation omitted). We review the grant of a motion for summary judgment de novo, "view[ing] the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

So viewed, the record shows that in the early hours of January 3, 2021, a fight broke out in the parking lot of Sheba Ethiopian Restaurant ("Sheba") in Brookhaven. Mark Lincoln was working at Sheba as a security guard on the date in question. Specifically, Sheba had contracted with Saint Security, LLC to provide security

2

services, and Lincoln was working for Saint Security at the time of the incident at issue in this case. When Lincoln arrived, a manager informed him that Sheba needed extra security because "a lot of different gang members" were going to be at the restaurant that night.

Lincoln, a convicted felon, was prohibited by law from carrying a firearm, but he was armed on the night in question. A bartender informed Lincoln that some men had stolen liquor and were attempting to leave without paying a $1,500 bar tab. While Lincoln tried to find the men, he was "pushed" out into the parking lot area. Once in the parking lot, Lincoln attempted to figure out who had "skipped out on the tab."

Surveillance footage depicts an unidentified man forcefully yanking Jones, who was at Sheba that night with friends, out of the door of the restaurant and onto the sidewalk, while Lincoln exits the building and stands by the door. Jones then moves into the parking lot, appears to be attempting to diffuse an altercation, and goes back toward the door. Several other individuals leave the restaurant, and groups of people continue to argue in the parking lot and near the front door. Approximately two minutes later, Jones and Lincoln walk away from the group and Jones suddenly punches Lincoln in the face. Lincoln then shoots Jones, who falls to the ground, and Lincoln and the remaining bystanders flee the scene. As a result of the bullet hitting

the right side of his brain, Jones has ongoing issues with the left side of his body, including problems with his left wrist, ankle, toes, fingers, and shoulder. Jones has experienced memory problems since the shooting and has no independent recollection of the incident, and his next memory after January 1, 2021, is waking up in the hospital on January 3, 2021.

On June 10, 2022, the Appellants filed the underlying complaint against Scarlett and Sheba, later amending their complaint to add Lincoln, K & T Elite Protection Services, LLC ("K & T"),[1] and Saint Security as party defendants. As relevant here, the Appellants alleged that Scarlett owned the property where the shooting occurred and breached its duty to protect the safety of Jones, its invitee. In particular, the Appellants alleged that Scarlett had actual or constructive knowledge that the security personnel employed by K & T and Saint Security were armed and not properly trained, and thus posed a safety risk to invitees.

Scarlett moved for summary judgment, arguing that Jones voluntarily engaged in combat with Lincoln, thereby establishing his superior knowledge of the risk and absolving Scarlett of liability. In opposition to Scarlett's motion for summary judgment, the Appellants argued that the mutual combatant doctrine was inapplicable

---

[1] K & T is a security company owned by Lincoln.

because Lincoln had an employment relationship with Scarlett's tenant, Sheba. The Appellants also highlighted Lincoln's status as a convicted felon who was prohibited from carrying a firearm, and argued that Scarlett had constructive knowledge of the risk faced by Jones, pointing to evidence that two prior incidents of violence had occurred on the premises.

After a hearing, the trial court granted Scarlett's motion for summary judgment based on its determination that, as a matter of law, Jones was a mutual combatant in the incident that caused his injury and, therefore, had knowledge of the risk of harm that was superior to that of Scarlett. The court highlighted the surveillance footage of the incident, as well as Jones's deposition testimony that he did not know why he punched Lincoln, and "d[id]n't know why [he] reacted like that." The trial court concluded that the evidence demonstrated without dispute that Jones engaged in mutual combat, and thus "had superior knowledge of the risk of harm stemming from his own conduct." This appeal followed.

In their sole claim of error, the Appellants contend that the trial court erred in concluding that the mutual combatant doctrine governs the case and warrants judgment in Scarlett's favor as a matter of law. We disagree.

Under Georgia law, an owner or occupier of land owes its invitees a duty "to

exercise ordinary care in keeping the premises and approaches safe." OCGA § 51-3-1.

A proprietor is not the insurer of the safety of its invitees, but is bound to exercise ordinary care to protect its invitees from unreasonable risks of which it has superior knowledge. *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997). "Generally, an intervening criminal act by a third party insulates a proprietor from liability unless such criminal act was reasonably foreseeable." *Fair v. CV Underground, LLC*, 340 Ga. App. 790, 792 (1) (798 SE2d 358) (2017). "But even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the *superior* knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm." Id. (citation and punctuation omitted; emphasis in original).

> However,

> when a person is injured in the course of mutual combat, the combatants are deemed to have superior knowledge of the risk of harm, because by their voluntary participation, the combatants have selected the time, date, and place for the altercation. Mutual combat exists where there is a fight with dangerous or deadly weapons and when both parties are at fault and are willing to fight because of a sudden quarrel. In such a case, any injuries to the combatants resulted from their own conduct; under such circumstances, the existence of prior criminal acts on the premises is irrelevant and cannot form a basis for liability on the premises owner.

*Fair*, 340 Ga. App. at 792-793 (1) (citations and punctuation omitted).

Here, the record demonstrates that the mutual combatant doctrine applies as a matter of law. As described above, Jones had ample time to leave the scene and avoid the possibility of injury from the affray. Furthermore, Jones himself punched Lincoln in the face, and this act precipitated Lincoln's shooting Jones. See *Rappenecker v. L. S. E., Inc.*, 236 Ga. App. 86, 87-88 (2) (510 SE2d 871) (1999) (where plaintiff deliberately injected himself into a volatile situation by exiting his car to confront individual who had spat on him, plaintiff, "[w]ithout question . . . had knowledge superior to that of [the proprietor] of the possible risk of additional trouble with this perpetrator"); *Fagan v. Atnalta, Inc.*, 189 Ga. App. 460, 460-462 (376 SE2d 204) (1988) (affirming grant of summary judgment to bar owner where plaintiff "deliberately entered into a volatile confrontation between management and patrons[,] saw the entire situation in front of him[, and] . . . obviously assumed the risk of injury by voluntarily confronting four rowdy customers being ejected from a bar by management").

The Appellants maintain that the cases relied upon by the trial court in its order are inapplicable because they do not involve situations where one of the combatants had a connection to the property owner. According to the Appellants, "[t]he parking

lot shooting of [ ] Jones was initiated by [ ] Lincoln and three other security guards at the request of a waitress to confront an unidentified group of patrons who were allegedly skipping out on a bar tab."[2] The Appellants also maintains that Scarlett had knowledge superior to Jones that (1) Sheba needed more security guards on the night in question based on its hosting "a special event in which gang members would show up;" (2) a waitress would summon a four-man security team to confront a patron about an unpaid bar tab; and (3) Lincoln was armed when he approached Jones in the parking lot. The Appellants argue that these facts, coupled with Lincoln's employment relationship with Sheba (as Scarlett's tenant), render the mutual combat doctrine inapplicable. Although the Appellants correctly highlight that the determining factor in the mutual combat doctrine is the combatant's superior knowledge of the risk, their arguments on this issue miss the mark.

As an initial matter, the Appellants have failed to point to evidence of Scarlett's

---

[2] The Appellants also contend that Lincoln's invocation of his Fifth Amendment privilege against self-incrimination via his refusal to answer certain questions about the shooting during his deposition permits the trial court to draw adverse inferences against Lincoln's testimony. See *Parham v. Stewart*, 308 Ga. 170, 174 (2) (b) (839 SE2d 605) (2020). However, Scarlett does not dispute that Lincoln shot Jones, and Jones does not elaborate on this argument to explain what inferences should be drawn from Lincoln's invocation of his Fifth Amendment privilege. In any event, "our case law does not require a trial court to draw such an inference, nor does it state that the adverse inference is irrefutable." Id. at 174 (2) (b) n. 8.

knowledge of these circumstances, much less superior knowledge. Importantly, the application of the mutual combat doctrine is not precluded where a plaintiff lacks knowledge that one of the combatants is armed because "(a)n adult of ordinary intelligence will be held to be aware of manifest risk or danger of possible injury when he deliberately and voluntarily joins in an affray, as a matter of law." *Cornelius v. Morris Brown College*, 299 Ga. App. 83, 86 (3) (681 SE2d 730) (2009) (citation and punctuation omitted).

We also find no merit in the Appellants' contention that a jury question remains as to Scarlett's constructive knowledge. In support of this argument, the Appellants point to complaints filed against Sheba in which the plaintiffs alleged that they suffered injuries as a result of third-party criminal attacks at the restaurant. In the first complaint, the plaintiff alleged that in 2014, he was shot by unknown assailants in Sheba's parking lot. In the second complaint, the plaintiff alleged that she was injured when a security guard employed by Sheba pushed her to the ground and "dr[ove] his knee in her back and be[gan] antagonizing her."

A plaintiff may establish that a criminal act was reasonably foreseeable on the part of the property owner by showing the owner's knowledge of a pattern of prior "substantially similar" crimes on the premises "so that a reasonable person would

take ordinary precautions to protect his or her [invitees] against the risk posed by that type of activity." *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997). Although Scarlett disputes its knowledge of these alleged prior instances, where the plaintiff's injuries arise from mutual combat, "the existence of prior criminal acts on the premises is irrelevant and cannot form a basis for liability on the premises owner." *Porter v. Urban Residential Dev. Corp.*, 294 Ga. App. 828, 832 (2) (670 SE2d 464) (2008) (citation, punctuation and emphasis omitted). Put another way, where, as here, the record establishes without dispute that Jones voluntarily engaged in the combat that led to his injuries, his knowledge is deemed superior to Scarlett's "as a matter of law." *Fair*, 340 Ga. App. at 793 (1).

Finally, we disagree with the Appellants' argument that the Supreme Court of Georgia's decision in *Ga. CVS Pharmacy, LLC v. Carmichael,* 316 Ga. 718 (890 SE2d 209) (2023) ("*Carmichael*"), requires a different result in this case. Specifically, the Appellants maintain that the trial court should have applied the "totality of the circumstances" test to analyze whether Lincoln's third-party criminal act was reasonably foreseeable. See id. at 726 (II) (C) ("the pertinent question [in determining whether a third-party criminal act is foreseeable] is whether the totality of the circumstances relevant to the premises gave the proprietor sufficient reason to

anticipate the criminal act giving rise to the plaintiff's injuries on the premises[ ]")
(punctuation omitted). However, the *Carmichael* decision does not require courts to
apply the totality-of-the-circumstances test where, as here, the plaintiff's knowledge
is superior to the property owner's based on the plaintiff's decision to engage in
mutual combat. In any event, the Supreme Court in *Carmichael* reiterated the well-
established principle that "the trial court, in plain and palpable cases, may resolve the
question of reasonable foreseeability as a matter of law — that is, if the court
concludes on summary judgment that no rational juror could resolve the issue in the
non-moving party's favor." Id. at 725 (II) (B) (punctuation omitted). We find that the
circumstances present here and described above are such a "plain and palpable" case,
and, accordingly, the trial court did not err in granting Scarlett's motion for summary
judgment.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*