**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2019**

# In the Court of Appeals of Georgia

A18A1790. GRESHAM v. HARRIS a/k/a "TI" et al.

DILLARD, Chief Judge.

What started off as a jam-packed week of parties, concerts, and watching renowned rappers mixing new music tracks in the waning days of summer abruptly ended with Norris Gresham being dragged down a flight of 30 stairs and viciously pistol whipped in front of a crowd of onlookers. Gresham blacked out shortly after the attack began, eventually coming to in a nearby parking lot. He then called the police, who responded to the scene and transported him to the precinct (where he gave them a report of the incident). Gresham suffered significant physical injuries during the attack, and later filed suit against numerous parties.

Gresham alleged several claims against Clifford Harris a/k/a "TI" or "Tip";[1] Echo Studios, LLC; Grand Hustle, LLC; Grand Hustle Management, LLC; King of da South, Inc. (collectively, "Harris defendants"), and others to recover for the injuries he sustained when Jhonathan Carle a/k/a "Spodee" attacked him on property partly owned by Harris. The trial court granted summary judgment to the Harris defendants, and Gresham appeals, arguing that the court erred in finding that the defendants or their agents (1) were not in control of the property at the time of the attack; (2) were not responsible for knowingly allowing an environment to exist that placed him at a greater risk of injury; and (3) did not conspire with Carle or were not otherwise complicit in the attack. For the reasons set forth *infra*, we affirm.

As a preliminary matter, it is helpful to identify some of the individuals and corporate entities that are either parties to this appeal or otherwise involved in the events leading up to the assault. As to the corporate-entity defendants, Harris and Jason Geter co-own both Grand Hustle, LLC, which is a record label, and King of da South, Inc., which is a company that "facilitates certain areas of [their] business."

---

[1] Clifford Joseph Harris, Jr.—known professionally as "T.I." or "Tip"—is an American rapper and actor, and he has been described as "one of the artists who popularized the hip hop subgenre trap music, along with Young Jeezy and Gucci Mane." Wikipedia, https://en.wikipedia.org/wiki/T.I. (last visited March 4, 2019).

2

Harris and Geter also co-own Echo Studios, LLC, which is a recording studio located at 1740 Defoors Place in Atlanta, where the relevant events occurred. Grand Hustle entered into "exclusive recording artist agreement[s]" with several recording artists, including Carle and a group known as P$C ("Pimp $quad Click"), which includes Nathaniel Josey a/k/a "Mac Boney," Cortez Thomas a/k/a "C-Rod," Akeem Lawal, and Sean Merrett. Finally, Grand Hustle Management is a company that primarily manages recording artists, and it is solely owned by Geter, who is *not* a party in this appeal.

Turning to the evidence, which we view in the light most favorable to Gresham (*i.e.*, the nonmoving party),[2] the record shows that on September 5, 2010, Gresham went to Echo Studios for a movie premiere ("Takers"), a Labor Day cookout, and a showcase of Grand Hustle recording artists. Later that evening, Gresham, along with others, went to a nightclub ("Club Libra"), where he worked for Josey as his assistant.[3] Gresham's job was to make sure that Josey did not "get in any

---

[2] *See, e.g.*, *Langley v. MP Spring Lake, LLC*, 345 Ga. App. 739, 739 (813 SE2d 441) (2018). Our recitation of the facts is gleaned almost exclusively from Gresham's deposition testimony.

[3] According to Gresham, he had worked for Josey "on and off for the past 10 years," and was typically paid to "go out of town on the road" and "pass out flyers, pamphlets, distribute his CDs and things like that" whenever Josey was "about to

confrontations with . . . patrons in the nightclub, distribute CDs to the patrons, and to make sure that [they] exit[ed] safely and [did] not get in any trouble." Eventually, everyone returned to the studio for an after party, where Gresham continued working as Josey's assistant.

While at the nightclub, Josey wore a gold-encrusted chain that belonged to Michael Render a/k/a "Killer Mike," another recording artist. But upon his return to the studio, after "working on the next mix [they] were about to release," Josey noticed the Render's chain was missing and there was then "chaos in the building." According to Gresham, Render stopped by the studio and "threatened to kill everybody in the building if his chain was not returned to him." And after Render left the studio, the building was "on lockdown" and the only way to leave was to exit through Harris's office. Carle—who had a gun on him—and some other guests also left the studio before the lockdown occurred.

At some point, Josey contacted Harris to advise him of the missing chain and that a search of the studio was being conducted. Harris informed Josey that if the chain was not recovered, he would be required to reimburse Render for the loss. And while the search for the missing chain was ongoing, Gresham informed the others that

release a project or he has an album coming out."

he had seen Carle trying to sell his firearm to Thomas in Terrance "Cap" Beasley's studio bedroom,[4] which led someone to suggest that they "should do a full search of the building and go back in [Beasley's bedroom] and check the ceiling." Then, after searching the ceiling of the bedroom, the missing chain was discovered.[5] Gresham then told the others that he had previously seen Carle "stashing the gun in the ceiling" in Beasley's bedroom.

According to Gresham, Josey and Thomas contacted Carle to let him know that he had been "busted" for stealing the necklace, and Carle "decided to return to the studio to commit harm against [Gresham]." Apparently, Carle believed Gresham "snitched on him" because Gresham had seen Carle "inside [Beasley's bedroom]

---

[4] Terance Beasley is a long-time friend of Harris, and during all relevant times, he was staying in a bedroom on the third floor of the studio. He also was employed by Harris to be in charge of the security and management of the studio.

[5] Gresham testified that he first arrived at the studio on September 5, 2010, but that the events described in this appeal occurred over several days, during which many of the individuals involved stayed at the studio (which was open 24 hours a day). According to Gresham, people were "still socializing" there as of September 7, 2010, and the chain was found at 3:00 a.m. on the 8th. Gresham's testimony is not exactly clear as to which events happened on which particular day. In fact, Gresham admitted that he had a hard time "keeping all the dates straight" because the events he was describing were "a little bit running into each other." Nevertheless, Gresham's description of the relevant events in chronological order, even without particular dates, is sufficient information for us to discern the factual background underlying this appeal.

stashing the gun in the ceiling [in the same place] where [they] found the chain." Gresham "guess[ed]" that for Carle to keep his contract as a Grand Hustle artist, he would have to "assault" or "commit harm against [Gresham] to clear his name." When Carle arrived, Thomas and Beasley not only accused Carle of stealing the chain, they claimed that he had also stolen from them on previous occasions. Following this confrontation, Carle became "a little afraid, a little nervous[,]" and began threatening Gresham. Carle then aimed his gun at Gresham, at which point Beasley ordered everyone to go outside. Beasley also told Carle to put the gun down, or at the very least, to "take it outside," and not to shoot Gresham inside the studio.

Gresham refused to leave voluntarily, so Josey and Beasley grabbed him by the arms, pushed him out of Harris's office and onto a staircase, and encouraged him to "knock [Carle] out or something." Gresham first attempted to call 911, but Carle took his phone and threw it. Once outside, Gresham remained at the top of the stairs so the police would see him if they arrived, and Carle was at the bottom of the stairs, leaving Gresham with no way to escape. But then, Carle approached Gresham, pulled him down the flight of stairs, and beat him mercilessly with his gun for about half an hour in front of 25 to 30 witnesses. Gresham blacked out soon after the attack began, and all he can remember is going down the stairs and waking up later on the ground in

6

a nearby parking lot. Once he was conscious, Gresham was able to call the police, who responded to the scene and transported him to the precinct to report the incident. Gresham suffered significant physical injuries during the attack, and incurred dental and medical bills as a result of the injuries he sustained.

On August 6, 2015, Gresham filed a complaint against the Harris defendants and others, alleging claims of civil conspiracy, assault, battery, false imprisonment, and premises liability.[6] In addition to compensatory damages, Gresham requested punitive damages and attorney fees. Discovery ensued, and on September 29, 2016, the Harris defendants filed a motion for summary judgment, arguing, *inter alia*, that the assault was the result of a dispute with a third party with whom Gresham voluntarily associated and they did not have a duty to rescue him from harm they did not cause. Following Gresham's response in opposition to the motion and a hearing,

---

[6] This is the second renewal action of an earlier case in which Gresham sued the same defendants based on identical general allegations. *See Gresham v. Harris*, 329 Ga. App. 465, 465 (765 SE2d 400) (2014) (explaining that the appeal arose from Gresham's first renewal action against the Harris defendants). In the first renewal action, initiated on February 11, 2013, the trial court granted summary judgment to the defendants based on its finding that the complaint was time-barred. *Id.* On appeal, this Court disagreed and reversed. *See id.* at 465, 470. Thus, although we have previously reversed the trial court's grant of summary judgment to the same defendants, the earlier case is not binding because, here, the timeliness of the 2015 complaint is not at issue.

7

the trial court granted summary judgment to the Harris defendants. This appeal follows.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[7] And we review a grant or denial of summary judgment *de novo*, construing "the evidence in the light most favorable to the nonmovant."[8] With these guiding principles in mind, we will now address Greshem's specific claims of error.

1. In his first two claims of error,[9] Gresham contends that the trial court erred in finding that Harris (1) was not in control of the Echo Studios premises when the attack occurred and (2) did not knowingly allow an environment to exist that placed

---

[7] OCGA § 9-11-56 (c); *accord Langley*, 345 Ga. App. at 740.

[8] *Langley*, 345 Ga. App. at 740 (punctuation omitted).

[9] For each of his three claims of error, Gresham provides an opening paragraph setting forth general principles of law applicable to the issue at hand, but then simply recites his version of certain facts without ever applying any particular legal authority to the specific facts and circumstances of this case. Suffice it to say, rhetoric is not a substitute for "cogent legal analysis, which is, at a minimum, a discussion of the appropriate law *as applied to the relevant facts*." *Dixon v. Metro. Atlanta Rapid Transit Auth.*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) (emphasis supplied). To the extent that Gresham has not abandoned all of the claims of error asserted in this appeal, we will briefly address them in turn.

Gresham at greater risk of injury than he would have been elsewhere.[10] But the trial

court made no such rulings, and in fact, these arguments bare no relation to the order

being appealed. Indeed, the trial court did not address the questions of whether Harris

"controlled" the premises or knowingly allowed a dangerous environment to exist

there. Instead, the trial court correctly found that the fact "the alleged assault took

*place* at Echo [Studios] was irrelevant" because the dispute between Gresham and

Carle was "a private dispute" about which Gresham had superior knowledge to that

of Harris.[11] Indeed, Gresham was aware that Carle was armed, had a history of

---

[10] The trial court found that none of the corporate entities were alleged to be a landlord, and thus they had no duty to protect Gresham. Importantly, Gresham does not challenge this finding on appeal or explain how any of the corporate-entity defendants owed him a duty of care. Gresham has waived, then, any claim that the trial court erred in this respect by failing to enumerate it as an error and provide any supporting argument. *See Karlsberg v. Hoover*, 142 Ga. App. 590, 594 (236 SE2d 520) (1977) ("[T]his court has held that an appellant is required in its initial brief to file an argument which supports any enumerations of error it does not wish to waive."). As a result, we address Gresham's claims of error as to Harris only.

[11] *See Porter v. Urban Residential Dev. Corp*., 294 Ga. App. 828, 833 (2) (670 SE2d 464) (2008) (holding that the owners of an apartment complex were not liable for injuries sustained by the plaintiff during a fight with one of the complex's residents when, *inter alia*, the fight arose from a *personal* dispute over an allegedly defective CD player); *Griffin v. AAA Auto Club S., Inc*., 221 Ga. App. 1, 3 (1) (470 SE2d 474) (1996) (holding that owner of the premises where her boyfriend shot her was not liable for her injuries because she had superior knowledge of her boyfriend's characteristics and temperament and of their relationship status at the time of the shooting, the attack grew out of a private relationship with no connection to the

violence, and was upset with him over the stolen chain, while Harris was not even present at the time of the assault or for any of the events leading up to it.[12] Thus, as

---

property owner, and the *place* chosen for the attack "just happened" to be that location).

[12] *See Fair v. CV Underground, LLC*, 340 Ga. App. 790, 792 (1) (798 SE2d 358) (2017) (holding, in a premises-liability case, that "even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm" (punctuation omitted)); *Snellgrove v. Hyatt Corp.*, 277 Ga. App. 119, 124 (3) (625 SE2d 517) (2006) ("[A] property owner or occupier is not liable for a plaintiff's injuries caused by a dangerous condition if the plaintiff had equal or superior knowledge of the danger and failed to exercise ordinary care to avoid the danger." (punctuation omitted)). As to who had superior knowledge of the danger posed by Carle, Gresham now contends that Beasley, Josey, and Thomas saw Carle confront Gresham with a gun, but they did nothing to guard against the attack. He then summarily states, without citing to the record or any legal authority, that the "[d]efendants had prior knowledge of the impending assault and battery . . . Carle intended to commit against . . . Gresham and rather than attempt to stop it, they assisted in making it happen . . . ." But it is unclear how these cursory allegations of wrongdoing on the part of Beasley, Josey, and Thomas have any bearing on the instant appeal, in which none of them are parties. Moreover, as to the trial court's finding that Harris did not have superior knowledge of the threat posed to Gresham by Carle, Gresham's own deposition testimony established that, prior to the altercation with Carle, (1) he knew Carle had a firearm; (2) he knew that Carle was upset because he thought Gresham "snitched on him"; (3) he "decided to stay" at the studio despite being offered a ride to leave by someone who warned him that "there's fixing to be some trouble"; (4) he knew Carle had been involved in prior aggravated assaults and an armed robbery in which he shot a friend; and (5) he was aware in advance that Carle planned to attack him solely over the dispute about the chain. Under such circumstances, Gresham cannot credibly argue that he did not have *at least equal*, if not superior, knowledge of the threat posed by Carle.

10

to his first two claims of error, Gresham has simply not identified any alleged error committed by the trial court, and under such circumstances, we have no error to review.[13]

2. Lastly, Gresham argues that the trial court erred by holding that Harris did not conspire with Carle and was not otherwise complicit in the attack. But again, the trial court did not substantively rule on Gresham's conspiracy claim. Instead, the trial court merely found that the claim failed because there is no cause of action for conspiracy absent proof of any underlying tort; and this finding by the trial court is correct.[14] Regardless, we need not address Gresham's claim of error because, for the

---

[13] *See Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[O]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, 'He must stand or fall upon the position taken in the trial court.' Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court." (emphasis supplied) (citations & punctuation omitted)); *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293-94 (1) (701 SE2d 915) (2010) (same); *see also Lowery v. Atlanta Heart Assocs., P.C.*, 266 Ga. App. 402, 404-05 (2) (597 SE2d 494) (2004) ("Although under the 'right for any reason' rule this court will affirm the correct ruling of a trial court on grounds not addressed below, we do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised *or ruled upon* in the trial court." (emphasis supplied)).

[14] *See U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 264 Ga. 295, 297 (1) (443 SE2d 833) (1994) ("Accurately speaking, there is no such thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed

11

same reasons given in Division 1 *supra*, it bears no relation to the order being appealed.[15]

For all these reasons, we affirm the trial court's grant of summary judgment to the Harris defendants.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur.*

---

conspiracy, but none for the conspiracy alone." (punctuation omitted)); *Walker v. Oglethorpe Power Corp.*, 341 Ga. App. 647, 659 (2) (c) (802 SE2d 643) (2017) ("[A]bsent the underlying tort, there can be no liability for civil conspiracy." (punctuation omitted)); *Hartsock v. Rich's Empls. Credit Union*, 279 Ga. App. 724, 726 (2) (632 SE2d 476) (2006) (same).

[15] *See supra* note 13.